

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
Austin Division**

| | | |
|---|---|---|
| **COMTEL TELCOM ASSETS LP,** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CA No.: A08CA 454LY** |
| | § | **[Jury Trial Demanded]** |
| **ALVAREZ & MARSAL, INC.,** | § | |
| **ALVAREZ & MARSAL BUSINESS** | § | |
| **CONSULTING, LLC, ALVAREZ &** | § | **Plaintiff's Original Complaint** |
| **MARSAL HOLDINGS, LLC, and** | § | |
| **ALVAREZ &MARSAL, LLC,** | § | |
| **Defendants** | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

Plaintiff **COMTEL TELCOM ASSETS LP,** complaining of Defendants **ALVAREZ &**

**MARSAL, LLC, ALVAREZ & MARSAL, INC., ALVAREZ & MARSAL BUSINESS**

**CONSULTING, LLC,** and **ALVAREZ & MARSAL HOLDINGS, LLC,** files this Original

Complaint as follows:

### A. PARTIES

1.      Plaintiff **COMTEL TELCOM ASSETS LP** ("Comtel") is a Texas limited partnership,

which has its principal place of business in Travis County, Texas.

2.      Defendant **ALVAREZ & MARSAL, LLC,** is a foreign corporation, domiciled at 600

LEXINGTON AVENUE 6TH FLOOR, NEW YORK, NY 10022 and doing business in Travis

County, Texas at all relevant times.  Defendant does not have a registered agent for

service of process in Texas.  Therefore, service is had on this Defendant by serving Phil

Wilson, the Texas Secretary of State, at 1019 Brazos Street, Austin, Texas 78701, who

may then forward a copy of citation to Defendant's President at Defendant's home office

address at  600 LEXINGTON AVENUE 6TH FLOOR, NEW YORK, NY 10022.

3.      Defendant **ALVAREZ & MARSAL, INC.**, is a foreign corporation, domiciled at 600 LEXINGTON AVENUE 6TH FLOOR, NEW YORK, NY 10022 and doing business in Travis County, Texas at all relevant times.  Service is had on this Defendant by serving its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, TX 78701.

4.      Defendant **ALVAREZ & MARSAL BUSINESS CONSULTING, LLC**, is a foreign corporation, domiciled at 600 LEXINGTON AVENUE 6TH FLOOR, NEW YORK, NY 10022 and doing business in Travis County, Texas at all relevant times.  Service is had on this Defendant by serving its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, TX 78701.

5.      Defendant **ALVAREZ & MARSAL HOLDINGS, LLC**, is a foreign corporation, domiciled at 600 LEXINGTON AVENUE 6TH FLOOR, NEW YORK, NY 10022 and doing business in Travis County, Texas at all relevant times.  Service is had on this Defendant by serving its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, TX 78701.

### B.  CONDITIONS PRECEDENT

6.      All or any conditions precedent have been performed or have occurred.

### C.  VENUE AND JURISDICTION

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship and the amount in controversy exceeds $75,000.

8.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because all or a substantial portion of the conduct forming the bases of Plaintiff's counts and causes of action against Defendants occurred in Travis County, Texas.

### D.  FACTUAL ALLEGATIONS

9.      Unless otherwise alleged, whenever Plaintiff alleges herein that one or more Defendant did or failed to do any act or thing, or made any misrepresentation, Plaintiff's allegation is that Defendants acted together with the full authorization, ratification or agreement of all Defendants, and in joint enterprise or conspiracy with one another.

10.     Plaintiff purchased the assets of VarTec Telecom, Inc. and various other entities (collectively, "VarTec"), a telecommunications company, for approximately $82,000,000.00. The purchase of said assets was with and through an approved auction in the United States Bankruptcy Court, Northern District of Texas, Division 6, in which VarTec had filed for protection from creditors under Case Number 04-81694-HDH-11 in or about November of 2004.  The purchase required that Plaintiff assume no liabilities of VarTec.

11.     Because Plaintiff did not have the necessary licenses to operate as telecommunications carrier, it had to obtain its FCC license, as well as its PUC licenses from all 50 states.  To obtain such licenses would take Plaintiff until approximately June of 2006, when final closing would occur on June 7, 2006.

12.     The purchase of the assets was structured such that in or about October 2005, Plaintiff made the required purchase payment of approximately $82,000,000.00. A portion of this money was taken by the bankruptcy trustee for payment of creditors.  The other portion was held in escrow to be released at final closing.

13.     At all times prior to the final closing date of June 7, 2006 and prior to the auction of the assets of VarTec and purchase of them by Plaintiff, Defendant **ALVAREZ & MARSAL, LLC** sought and obtained authority from the bankruptcy court to make management and operations decisions for VarTec until the closing date.[1]

14.     Included in those decisions were the obligations and duties of Defendants to cause all telecommunications services purchased by VarTec while in bankruptcy to pre-paid/paid in advance, such that no assets were encumbered by and amounts for telecommunications services purchased and used by and through VarTec during its bankruptcy.

15.     Moreover, Defendants knew and understood at all times that Plaintiff was and did make an asset-only purchase, and was not to assume any liabilities of the bankrupt entities, such that the preservation of the nature and integrity of that asset-only purchase transaction was a material part of the duties and responsibilities of the Defendants upon which Plaintiff was legally entitled to rely.

16.     Plaintiff made its decision to purchase the assets of VarTec and pay the amount it did, based upon Defendants representations that they had faithfully executed on all of their duties in maintaining that no material or substantial liabilities existed or otherwise encumbered the assets purchased by Plaintiff.

17.     Moreover, Plaintiff investigated the status of all accounts during the period allowed after its purchase of the assets based upon information, books and records controlled and provided by the Defendants, none of which indicated, suggested or disclosed that any

---

[1]     As of the filing date of this Original Complaint, Defendant **ALVAREZ & MARSAL, LLC** maintains to the Texas State Comptroller that it is a Delaware corporation. However, said Defendant cannot be located through the search and find services provided by the Delaware Secretary of State. Plaintiff therefore alleges that Defendant **ALVAREZ & MARSAL, LLC** at all times and remains in joint enterprise or conspiracy with one or more of the other named Defendants.

assets were so encumbered or that any material liabilities existed in the form of unpaid telecommunications services.  Plaintiff made its decision that adjustments to the purchase price were not necessary in any respect based upon the information controlled and disclosed by Defendants to Plaintiff, none of which suggested or indicated in any way that any services which were required to have been pre-paid during the bankruptcy had not been pre-paid, and certainly none which suggested approximately $10,000,000.00 in such liabilities.  However, the opposite was true, and Defendants did not disclose, and in fact concealed, this material information from Plaintiff, such that Plaintiff forever lost the opportunity to recover through the bankruptcy of all or a portion of the purchase monies it paid for the assets of VarTec.

18.     During the period after Plaintiff's purchase of the assets, and until final closing (the "interim period"), Plaintiff was not permitted to and did not assume any decision-making authority in the material ongoing operations of VarTec.

19.     However, prior to final closing, Defendants were charged with the obligation and duty to make decisions whether and on what terms to assume or reject for continuation – after final closing – of approximately 15,000 telecommunication service agreements in place between VarTec and carriers who provided telecommunications services for sale by VarTec to its customers.

20.     During the interim period, Plaintiff did not have the authority to negotiate, assume or reject any of these agreements, and could only make suggestions to Defendants, which suggestions had to be based primarily and substantively on all information controlled, compiled and disclosed by Defendants to Plaintiff.

21.     During the interim period, Defendants controlled all or substantially all of the accounting and documentation related to the telecommunications services agreements, and Plaintiff had no such access.   Plaintiff relied upon the accounting and related information provided to it by Defendants on the telecommunications services agreements before making its determinations which agreements to suggest assumption and which agreements to reject. Moreover, some of the telecommunications services from particular carriers were critical, such that Plaintiff had to have a broad and accurate understanding of all feasibility and accounting issues relating to all of the approximate 15,000 agreements, so as to allow Plaintiff appropriate insight into the financial impact and repercussions of acceptance of the critical agreements.

22.     During the interim period, Defendants were required to continue to cause to pre-pay for the telecommunications services provided by the approximate 15,000 carriers. Monies to make such payments came in whole or in part from the purchase monies paid by Plaintiff with the understanding and agreement by all parties that said purchase was for assets only with no liabilities.

23.     During the interim period, Defendants' duties and responsibilities included the determination of whether the pre-payments were adequate for the services subsequently provided, especially as according to invoices for such services.  Defendants' accuracy and honesty in reconciling pre-paid amounts to these carriers with the amounts actually owed after the services were provided were critical to Plaintiff in its determination of which agreements to suggest to Defendants to assume or reject for continuation after closing.

24.     Defendants thereafter, but prior to final closing, made decisions to approve or reject as to all of the approximate 15,000 telecommunications services agreements, generally, if not always, based on the suggestions of Plaintiff.  Upon final closing, Plaintiff would be bound by the terms of the agreements approved by Defendants.

25.     At all times up until closing, Defendants represented to Plaintiff that the information regarding the amounts owed on the approximate 15,000 telecommunications services agreements were accurately calculated by Defendants based on all payments, offsets and credits.  Moreover, Defendants represented to Plaintiff that all telecommunications services incurred during the bankruptcy were pre-paid.   Plaintiff relied on these false representations to its damage and detriment in suggesting to Defendants which agreements to approve or reject.  Plaintiff also relied to its damage and detriment on Defendants' decision to approve and reject the approximate 15,000 telecommunications services agreements.

26.     Plaintiff based all of its suggestions to Defendants on these agreements based upon the information controlled and disclosed by Defendants to Plaintiff, none of which suggested or indicated in any way that any services which were required to have been pre-paid during the bankruptcy had not been pre-paid, and certainly none which suggested approximately $10,000,000.00 in such liabilities.

27.     At the time of final closing, the records provided to Plaintiff by Defendants established that Plaintiff was assuming control of the assets it purchased, inclusive of the telecommunications services agreements approved by Defendants to be assumed by Plaintiff, with no liabilities.  However, several months following the closing, as the invoices

for telecommunications services came through, Plaintiff discovered that approximately $10,000,000.00 was owed on telecommunications services incurred by VarTec during the bankruptcy and up to the date of final closing. However, due to Defendants' approval prior to closing of the assumption of the agreements, Plaintiff was bound to honor the agreements and pay the amounts owed.

28.    Plaintiff would not have suggested to Defendants to agree to the assumption by Plaintiff of agreements which obligated Plaintiff to any debt, and certainly not any which obligated Plaintiff to approximately $10,000,000.00 of undisclosed and undiscoverable debt incurred during the regime of control of the Defendants.

29.    Moreover, Defendants knew Plaintiff had purchased only the assets of VarTec, and that the terms of the purchase required that Plaintiff assume no liabilities of VarTec. Defendants' acts, omissions and misrepresentations proximately caused damage to Plaintiff in excess of $10,000,000.00.

30.    Prior and up to the closing date, Defendants caused to be filed monthly reports with the bankruptcy court and provided testimony concerning the accuracy of the transactions as calculated by Defendants pursuant to their respective professional and fiduciary obligations. Defendants should have revealed the obligations amounting to approximately $10,000,000.00, but they did not. Defendants should have revealed that they were estimating as to these amounts and their estimates could be materially false or misleading, including by as much as much as approximately $10,000,000.00. Instead they led Plaintiff to believe and rely on their position of superior knowledge that the liabilities were accurately stated when Defendants knew and should have known they were not.

31.     During the interim period, Defendants were compensated in whole or in substantial part with monies paid by Plaintiff.

### E.  THE DISCOVERY RULE AND FRAUDULENT CONCEALMENT

32.      The tortious conduct forming the bases of Plaintiff's causes of actions against Defendants were not discoverable by Plaintiff prior to July 6, 2006.

33.     Defendants fraudulently concealed their errors from Plaintiff, and Plaintiff was otherwise prevented by Defendants from discovering the tortious conduct forming the bases of Plaintiff's causes of actions against Defendants.

### CAUSES OF ACTION

### F.  COUNT I – NEGLIGENT MISREPRESENTATIONS

34.     Plaintiff incorporates Paragraphs 1 through 28 by reference.

35.     Plaintiff hereby sues Defendants for negligent misrepresentations as that term is known and understood under Texas law.

36.     Defendants made representations in the course of their business and in these transactions in which Defendants had a pecuniary interest.

37.     The representations made by Defendants supplied false information for the guidance of Plaintiff in its business.

38.     Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

39.     Plaintiff seeks as damages for this Count disgorgement to it by Defendants of the fees collected by Defendants.

40.     Additionally, Plaintiff seeks as damages for this Count no less than $10,000,000.00, in the form of compensation for its pecuniary loss proximately caused by the tortious conduct of Defendants.

## G. COUNT II – FRAUD

41.     Plaintiff incorporates Paragraphs 1 through 35 by reference.

42.     Plaintiff hereby sues Defendants for fraud as that term is known and understood under Texas law.

43.     Defendants had special knowledge and information superior to that possessed by Plaintiff and to which Plaintiff did not have equal access.

44.     Defendants made material misrepresentations, with knowledge of their falsity or made them recklessly without knowledge of the truth and as a positive assertion

45.     Defendants knew that Plaintiff was ignorant of the facts concerning the telecommunications services agreements and did not have an equal opportunity to discover the truth.

46.     Defendants made the misrepresentations with the intention that they be acted on by Plaintiff.

47.     Defendants intended to induce Plaintiff to assume liabilities in excess of or approximating $10,000,000.00 by failing to disclose the facts.

48.     Plaintiff relied on the misrepresentations and non-disclosures of Defendants and thereby suffered and continues to suffer injury and damage.

49.     Plaintiff seeks as damages for this Count disgorgement to it by Defendants of the fees collected by Defendants.

50.     Additionally, Plaintiff seeks as damages for this Count no less than $10,000,000.00, as well as all damages for the loss of Plaintiff's benefit of the bargain, mitigate expenses, damages continuing after mitigation and incidental damages.

## H. COUNT III – BREACH OF FIDUCIARY DUTIES

51.     Plaintiff incorporates Paragraphs 1 through 45 by reference.

52.     Plaintiff hereby sues Defendants for breach of their fiduciary duties as that phrase is known and understood under Texas law.

53.     A relationship of trust and confidence existed because Plaintiff justifiably placed trust and confidence in Defendants to act in the best interests of Plaintiff.

54.     Defendants failed to effectuate fair and equitable transactions.

55.     Defendants failed to make reasonable use of the confidence Plaintiff placed in Defendants.

56.     Defendants failed to act in the utmost good faith and failed to exercise the most scrupulous honesty to Plaintiff.

57.     Defendants failed to placed the interests of Plaintiff before those of the Defendants, used the advantage of their position to gain benefits for themselves at the expense of Plaintiff, and allowed themselves to be placed in a position where their self-interests would conflict with their obligations as a fiduciary to Plaintiff.

58.     Plaintiff seeks as damages for this Count disgorgement to it by Defendants of the fees collected by Defendants.

59.     Additionally, Plaintiff seeks as damages for this Count no less than $10,000,000.00, as well as all damages for the loss of Plaintiff's benefit of the bargain, mitigate expenses, damages continuing after mitigation and incidental damages.

I.   **COUNT IV – CIVIL CONSPIRACY/SINGLE BUSINESS ENTERPRISE**

60.     Plaintiff incorporates Paragraphs 1 through 54 by reference.

61.     Plaintiff hereby sues Defendants for civil conspiracy or as acting in a single business enterprise as those terms are known and understood under Texas law.

62.     Defendants acted together.   Defendants accomplished their object of causing Plaintiff to purchase and otherwise obligate itself to approximately $10,000,000.00 in liabilities in a transaction whereby Plaintiff was only obligated to purchase the assets of the entity Defendants were managing.

63.     Defendants had a meeting of the minds on this course of conduct.

64.     Defendants committed one or more of the unlawful, overt acts.

65.     Defendants wrongfully benefited from their collective tortious actions.

66.     Plaintiff suffered and continues to suffer injuries and damages as a proximate result.

67.     Plaintiff seeks as damages for this Count disgorgement to it by Defendants of the fees collected by Defendants.

68.     Additionally, Plaintiff seeks as damages for this Count no less than $10,000,000.00, in the form of compensation for its pecuniary loss proximately caused by the tortious conduct of Defendants.

69.    Additionally, Plaintiff seeks as damages for this Count no less than $10,000,000.00, as well as all damages for the loss of Plaintiff's benefit of the bargain, mitigate expenses, damages continuing after mitigation and incidental damages.

## J.  COUNT V – EXEMPLARY DAMAGES

70.    Plaintiff incorporates Paragraphs 1 through 33 and 41 through 69 by reference.

71.    Plaintiff hereby sues each Defendant for punitive and/or exemplary damages in the highest amount allowed under Texas law.

72.    The acts and omissions of each Defendant at the time of the occurrence involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, including Plaintiff.

73.    Each Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights and welfare of others, including Plaintiff.

## K.  INTEREST AND COSTS

74.    Plaintiff sues for pre-judgment and post judgment interest recoverable under Texas law.

75.    Plaintiff sues for all court costs allowable under Texas law.

## L.  JURY DEMAND

76.    Plaintiff demands a jury trial on all issues.

## PRAYER

WHEREFORE, PREMISES, CONSIDERED, Plaintiff prays that Defendants appear and answer herein, and that upon final trial of this cause, the Plaintiff have judgment against the Defendants, jointly and severally, for all actual and consequential damages, and each Defendant for exemplary damages, and both Defendants, jointly and severally, for Plaintiff's costs, expert fees, pre-judgment interest and post-judgment interest. Plaintiff prays additionally for such other and further relief at law or in equity, both general and specific, to which the Plaintiff may be justly entitled.

Respectfully submitted,

CHAMBERS, TEMPLETON, CASHIOLA
    & THOMAS
2090 Broadway
Beaumont, Texas 77701
(409) 835-5800 - Telephone
(409) 835-5880 - Telecopier

By: _____
    RANDAL CASHIOLA
    State Bar No. #03966802

ATTORNEY FOR PLAINTIFF

14

**⬧JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Comtel Telcom Assets, LP

**DEFENDANTS** Alvarez & Marsal, Inc., Alvarez & Marsal Business Consulting, LLC, Alvarez & Marsal Holdings, LLC, and Alvarez & Marsal, LLC

**(b)** County of Residence of First Listed Plaintiff   Travis County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   unknown
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Randal Cashiola; Chambers, Templeton, Cashiola & Thomas
2090 Broadway, Beaumont, Texas 77701; (409) 835-5800

Attorneys (If Known)   **A08CA 454LY**

**RECEIVED**
**JUN - 6 2008**
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1367; 28 U.S.C. 1391
Brief description of cause:
negligent misrepresentation; fraud; breach of fiduciary duties; civil conspiracy

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 06/06/2008   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

ORIGINAL

AO82
(Rev. 4/90)

**RECEIPT FOR PAYMENT**
**UNITED STATES DISTRICT COURT**
**for the**
**WESTERN DISTRICT OF TEXAS**
at _____ AUSTIN _____

**427628**
AR 428001

RECEIVED FROM   CHAMBERS TEMPLETON CASHIOLA + THOMAS

2090 BROADWAY

BEAUMONT TX 77701

| Fund | | ACCOUNT | AMOUNT |
|------|--|---------|--------|
| 6855XX | Deposit Funds | 086900 | 60 00 |
| 604700 | Registry Funds | 510000 | 190 00 |
| | General and Special Funds | | |
| 508800 | Immigration Fees | 086400 | 100 00 |
| 085000 | Attorney Admission Fees | | |
| 086900 | Filing Fees | TOTAL | 350.00 |
| 322340 | Sale of Publications | | |
| 322350 | Copy Fees | Case Number or Other Reference |
| 322360 | Miscellaneous Fees | 1:08 CV 454 |
| 143500 | Interest | |
| 322380 | Recoveries of Court Costs | NEW CASE |
| 322386 | Restitution to U.S. Government | |
| 121000 | Conscience Fund | COMTEL TELCOM ASSETS LP |
| 129900 | Gifts | VS ALVAREZ & MARSAL |
| 504100 | Crime Victims Fund | INC, et al |
| 613300 | Unclaimed Monies | |
| 510000 | Civil Filing Fee (½) | |
| 510100 | Registry Fee | |

$Checks and drafts are accepted subject to col-
lection and full credit will only be given when the
check or draft has been accepted by the financial
institution on which it was drawn. 24849

| DATE 6-9-08 | Cash | Check | M.O. | Credit | DEPUTY CLERK: |
|-------------|------|-------|------|--------|---------------|
| 6-6 2008 | | X | | | M. Morrin |